Ashot **KHATCHATRIAN**,
Plaintiff–Appellant,

v.

**CONTINENTAL CASUALTY COMPANY**, Defendant–Appellee.

No. 02–55916.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 2003.

Filed June 19, 2003.

Clint W. Feddersen, Glendale, CA, for the plaintiff-appellant.

Robert F. Keehn and Cameron H. Totten, Galton & Helm LLP, Los Angeles, CA, for the defendant-appellee.

Before SCHROEDER, Chief Judge, THOMPSON, and GRABER, Circuit Judges.

SCHROEDER, Chief Judge.

Ashot Khatchatrian filed this diversity action against Continental Casualty Company ("CNA"), alleging breach of contract and the implied covenant of good faith and fair dealing under California law. CNA had refused to pay Khatchatrian benefits as the beneficiary of an accidental death and dismemberment policy.[1] The policy

---

**1.** The relevant terms of the policy read, in full:

DEFINITIONS.... "Injury" means bodily injury caused by an accident which occurs while the Insured Person is covered under the policy and that results, directly and independently of all other causes, in loss covered by the policy.

provides accidental death benefits when "a covered injury results in loss of life . . . within 365 days after the accident." "Injury" is defined as "bodily injury caused by an accident . . . that results, directly and independently of all other causes, in loss covered by the policy." The policy does not define "accident." The district court granted summary judgment in favor of CNA, taking the view that the cause of the insured's death, a stroke, was not an "accident" within the meaning of the policy as interpreted under California law. *Khatchatrian v. Cont'l Cas. Co.*, 198 F.Supp.2d 1157 (C.D.Cal.2002).

We affirm the summary judgment because we agree with the conclusion of the district court. We issue this opinion in order to resolve conflicting interpretations in our district courts of the meaning of "accident" under California law. The district court in this case interpreted the relevant California case law to require that an "accident" be caused by an external event. *Id.* at 1162. A somewhat different view is represented by *Bornstein v. J.C. Penney Life Insurance Co.*, 946 F.Supp. 814 (C.D.Cal.1996). The court there said that a death is accidental if it was "objectively unexpected and unintended by the insured and happened out of the usual course of events." *Id.* at 819. This is a broader interpretation of the term than the district court applied here. The beneficiary in this case, appellant Khatchatrian, argues that the broader definition applies, and that it covers the unexpected intracranial hemorrhage, or stroke, that caused the insured's death.

The seminal California Supreme Court case interpreting "accident" is *Geddes & Smith, Inc. v. Saint Paul–Mercury Indemnity Co.*, 51 Cal.2d 558, 334 P.2d 881 (1959), authored by Justice Roger Traynor. It explained that a progressive condition or slow deterioration culminating in a tangible harm does not constitute an "accident" under a similar policy. *Id.* at 884. In holding that damage caused by the sudden failure of a number of aluminum doors was caused by an "accident," the court stressed that each failure was discrete, sudden, and unexpected:

No all-inclusive definition of the word "accident" can be given. It has been defined as a casualty—something out of the usual course of events and which happens suddenly and unexpectedly and without design of the person injured. It includes any event which takes place without the foresight or expectation of the person acted upon or affected by the event. . . . It bears emphasis that we are concerned, not with a series of imperceptible events that finally culminated in a single tangible harm, but with a series of specific events each of which manifested itself at an identifiable time and each of which caused identifiable harm at the time it occurred.

*Id.* (citations, internal quotation marks, and emphasis omitted).

Under the *Geddes & Smith* analysis, the question would be whether the cause of the insured's death, a stroke, was the culmination of a progressive deterioration of his vascular system, or whether it was a sudden and unexpected event in its own right. In this case, where the insured's own doctor stated that the stroke was caused by chronic high blood pressure or hypertension, the opinion in *Geddes & Smith* itself would support a conclusion that the stroke was not an "accident," but the result of a progressive condition.

In the years since *Geddes & Smith,* the California courts have further narrowed

. . . .

ACCIDENTAL DEATH BENEFIT. When a covered Injury results in loss of life of an Insured Person within 365 days after the date of the accident, We will pay the Principal Sum applicable to the Insured Person.

 

the meaning of "accident." For example, in *Williams v. Hartford Accident & Indemnity Co.*, 158 Cal.App.3d 229, 204 Cal. Rptr. 453 (1984), the court rejected a claim for accidental disability coverage where the insured's morning jog aggravated a detached retina, causing total blindness in one eye. The court explained that the insured "did not fall, bump into anyone, or even stop suddenly." *Id.* at 454. Rather, the jog aggravated a preexisting retinal condition by causing a buildup of subretinal fluid. *Id.* at 455. Similarly, in *Alessandro v. Massachusetts Casualty Insurance Co.*, 232 Cal.App.2d 203, 42 Cal.Rptr. 630 (1965), the court rejected a refrigerator repairman's claim for accidental disability benefits for back problems that developed over the course of several years and culminated in a herniated disc during a routine repair job. The court explained: "He was not doing any lifting at the time, nor was he struck on the back in any way, nor did he experience any external force on any part of his body." *Id.* at 632. These cases indicate that some external force or event must be a percipient cause of the harm.

Given our review of California law and the common understanding of the phrase "accidental death," we conclude that such a death must occur from external rather than natural causes. Our conclusion is consistent with the leading treatise on insurance law, which explains that an "accident" must entail "[s]ome form of external events and forces, as opposed to purely 'natural' processes, with natural processes—aging, congenital defects and disorders, cancer, and like conditions—generally not considered an 'accident.'" 10 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 139:13, at 139–33 (2002). Death from a stroke is not "accidental" within the meaning of the policy as interpreted under California law.

We therefore affirm the judgment of the district court.

AFFIRMED.